UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:24-cr-00184-3 |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| ANGELINA VENTURA, | ) | **OPINION AND ORDER** |
| Defendant. | ) | |

Before the Court is Defendant Angelina Ventura's motion to sever her trial from that of her co-defendants, Reginald McCurdy and King Stevenson. (Doc. 272.) Her motion is now fully briefed. (Docs. 276, 280.) For the reasons that follow, the motion is GRANTED.

## I. BACKGROUND

On May 30, 2024, a federal grand jury indicted Ventura on three drug-related charges. (Doc. 1, at ¶¶ 1, 63, 65.)[1] These charges stemmed from Ventura's alleged involvement with a drug trafficking scheme spearheaded by McCurdy and Stevenson. (*See id.* at ¶¶ 2-68.)[2] The indictment alleges that Ventura participated in this scheme in two ways: (1) she received

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

There is an error in the indictment that has caused the duplication of paragraph numbers from 61 through 67. Whenever the Court cites to Ventura's charges, paragraph 63 refers to Count 4 (PageID 17), and paragraph 65 refers to Count 10 (PageID 18).

[2] The cited paragraphs here are all under Count 1 (PageID 2-16).

packages containing fentanyl at her residence on behalf of McCurdy (*id.* at ¶¶ 2(C), 28-29, 40-41, 47-50, 53, 55), and (2) she ordered and received a pill press that she gave to McCurdy for the purpose of pressing fentanyl pills (*id.* at ¶¶ 2(D), 54, 56-57).

About a year after being indicted, Ventura entered a guilty plea. (Doc. 116.) However, she later learned that the government had inadvertently destroyed evidence, including suspected fentanyl from a package she allegedly received on behalf of McCurdy and the pill press discussed in the indictment. (Doc. 203, at 1803.) Based on these revelations, Ventura moved to withdraw her plea with the government's support. (Docs. 248, 253.) The Court granted the unopposed motion to withdraw her plea and set a joint trial for Ventura, McCurdy, and Stevenson. (Doc. 254.) Ventura now moves to sever her trial from that of her co-defendants. (Doc. 272.) In her view, McCurdy will offer exculpatory testimony in her favor if she is tried separately and subsequent to McCurdy's own trial, but he will likely invoke his Fifth Amendment right not to testify if the two are tried jointly. (*Id.* at 2384-85.)

## II. ANALYSIS

Under Federal Rule of Criminal Procedure 8(b), courts may try multiple defendants in a joint trial so long as those defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." *United States v. Sherrill*, 972 F.3d 752, 763 (6th Cir. 2020) (quoting Fed. R. Crim. P. 8(b)). In fact, the preference is to try defendants together whenever possible. *Zafiro v. United States*, 506 U.S. 534, 537, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). That is because joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.* (internal quotation marks and citation omitted).

Nonetheless it may sometimes be better to hold separate trials even if Rule 8(b)

technically permits a joint trial. *See id.* at 538. To account for such scenarios, Rule 14(a) allows a court to sever properly joined defendants "if a joint trial would prejudice a defendant." *Sherrill*, 972 F.3d at 763. But given the preference for joint trials, the bar for prejudice sufficient to warrant severance is high. Defendants are not entitled to separate trials "simply because they have a better chance of acquittal if they [are] tried alone." *Ross v. United States*, 339 F.3d 483, 493 (6th Cir. 2003) (alteration in original) (quoting *United States v. Breinig*, 70 F.3d 850, 853 (6th Cir. 1995)). "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

One type of prejudice that might warrant severance occurs when "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.* This situation most often arises when a co-defendant would invoke his Fifth Amendment privilege against self-incrimination and refuse to testify in a joint trial even though he would be willing to testify at a separate trial where his guilt or innocence is not at issue. *See, e.g.*, *United States v. Akins*, 995 F. Supp. 797, 814 (M.D. Tenn. 1998). Severance on this basis does not come easy. "[A] motion for severance on the ground of absence of a codefendant's testimony must be accompanied by more than a basic, unsupported contention that a separate trial would afford the defendant exculpatory testimony." *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987). Rather, defendants must satisfy a "stringent" four-part test by showing "(1) a bona fide need for the testimony, (2) the substance of the testimony, (3) its exculpatory nature and effect, and (4) that the codefendant will in fact testify if the cases are severed." *Id.* (quoting *United States v. Butler*, 611 F.2d 1066, 1071 (5th Cir. 1980)).

The *Causey* test applies to Ventura's motion because she argues severance is needed to secure the exculpatory testimony of her co-defendant, McCurdy. The Court concludes that Ventura has satisfied this test. She has described the substance of McCurdy's proposed testimony in enough detail, and the remaining three *Causey* factors all support holding a separate trial for Ventura.

**A. Substance of the Testimony**

To justify severance, Ventura must do more than assert that some "generic substantially exculpatory testimony" will be available in a separate trial. *United States v. Cobleigh*, 75 F.3d 242, 248 (6th Cir. 1996) (internal quotation marks omitted). She must "describe[] with particularity" what the expected testimony will be. *United States v. Ledbetter*, 137 F. Supp. 3d 1042, 1063 (S.D. Ohio 2015), *aff'd*, 929 F.3d 338 (6th Cir. 2019). To satisfy this requirement, Ventura points to three occasions when McCurdy described the testimony he could offer: a 2022 interview with federal law enforcement, a signed affidavit, and a 2026 interview with Ventura's counsel and a private investigator. (Docs. 272-1, -2, -4.)

Statements from the 2022 interview and the affidavit are too generic to support severance. In the 2022 interview, McCurdy recounted only that "he made [Ventura] do what [she] did because he was a good talker." (Doc. 272-1, at 2389.) Meanwhile, McCurdy's affidavit contains mostly conclusory assertions about Ventura's innocence. For example, McCurdy wrote that Ventura "should not be held accountable for action in which [she] had no participation or knowledge." (Doc. 272-2, at 2392.) McCurdy also claimed that "Ventura had no involvement in any drug conspiracy or illegal activities related to this case" and that "[s]he was not part of any planning, decision-making or participation in any criminal act." (*Id.* at 2391.) Notably lacking are any facts explaining *why* Ventura is not criminally responsible for

the acts alleged in the indictment (the receipt of fentanyl-containing packages and the ordering of a pill press).

The 2026 interview supplies the necessary detail, though. During the interview, McCurdy reported that his relationship with Ventura was strictly romantic and that she was not aware of any of his drug dealing activity. (Doc. 272-4, at 2395-96.) With respect to the packages of fentanyl sent to Ventura's address, McCurdy claimed that he had misled Ventura about the nature of those packages. McCurdy asked Ventura to receive a single package on his behalf, he explained, but he told her that the package would contain Christmas gifts for his mother. (*Id.* at 2396.) According to McCurdy, although he later had additional packages delivered to Ventura's address as well, he did not ask Ventura for permission first. (*Id.*) As for the pill press, McCurdy asserted that Ventura had been interested in opening a med spa that sold supplements, and he was the one who suggested purchasing a pill press in support of that goal. (*Id.* at 2395.) In McCurdy's telling, he provided Ventura with startup money to open the med spa and purchase the pill press, and Ventura eventually gave the press to him. (*Id.* at 2395-96.)

This account of relevant events is detailed and factual, and it therefore satisfies Ventura's burden to present the substance of McCurdy's potential testimony.

**B. Bona Fide Need**

Next, Ventura must demonstrate that she has a bona fide need for McCurdy's testimony, meaning that the information from McCurdy is not available from other sources. *See United States v. Karasarides*, 159 F.4th 972, 988 (6th Cir. 2025) (information admitted through other witnesses was not necessary for purposes of severance analysis). In this case, Ventura's contact with the alleged drug trafficking came solely through McCurdy, so only two individuals can directly speak to Ventura's knowledge and intentions regarding the alleged trafficking—

McCurdy and Ventura herself.

The problem with designating Ventura as an alternative source of the information in McCurdy's testimony is that Ventura also has a Fifth Amendment right not to testify. This means that Ventura is not available to testify for purposes of the *Causey* analysis. *United States v. Chasteen*, No. 3:20-cr-0008, 2020 WL 5267935, at *3, 2020 U.S. Dist. LEXIS 160837, at *9-11 (E.D. Tenn. Sept. 3, 2020). The government does not challenge this conclusion, arguing only that Ventura has failed to show need because the government has evidence contradicting McCurdy's proposed testimony. (Doc. 276, at 2408-09.) However, the presence of countervailing evidence has no bearing on whether McCurdy's testimony can be substituted at trial by other sources. Since it cannot be substituted, Ventura has demonstrated a bona fide need for that testimony.

**C. Exculpatory Nature**

After demonstrating need, Ventura must now show that McCurdy's proposed testimony is exculpatory. Evidence is exculpatory if it "tend[s] to negate directly the guilt of the defendant." *United States v. Crayton*, 357 F.3d 560, 569 (6th Cir. 2004). There is little doubt here that McCurdy's proposed testimony is exculpatory.

Ventura was charged with conspiracy to distribute controlled substances, possession with intent to distribute, and use of a communications facility to facilitate a drug felony. (Doc. 1, at ¶¶ 1, 63, 65.) The government has elected not to pursue the possession charge at trial. (Doc. 272, at 2379 n.1.) And the communications facility charge requires an underlying drug felony, which can only be the charged conspiracy given the government's decision not to pursue possession. *United States v. Wheat*, 988 F.3d 299, 312 (6th Cir. 2021). Ventura's guilt therefore turns on the conspiracy charge. In turn, a conviction for conspiracy to distribute controlled

substances requires the government to prove, among other elements, that Ventura had "knowledge and intent to join the conspiracy." *United States v. Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022) (quoting *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999)).

McCurdy's proposed testimony directly negates that element because it shows that Ventura did not intend to join any drug conspiracy—she lacked knowledge that such a conspiracy even existed. Plainly, then, the proposed testimony is exculpatory.

Once again, the government pushes back by identifying evidence that it says will undermine McCurdy's proffered testimony. (Doc. 276, at 2408-09.) The government also questions McCurdy's credibility and whether a jury would believe his testimony. (*Id.* at 2409.) These are all fair arguments to make to a jury and could well result in the government securing a conviction against Ventura at a separate trial. But the Court's task right now is not to determine who would win at trial. The question at this stage is only whether McCurdy's proffered testimony "tend[s]" to establish Ventura's innocence, not whether it definitively does so. *Crayton*, 357 F.3d at 569. The answer is *yes*, the testimony does "tend" to demonstrate innocence even if the government is correct that there is enough evidence to overcome this testimony.

**D. Co-Defendant's Willingness to Testify**

Finally, Ventura needs to show that McCurdy would likely testify if there were separate trials. The government attempts to cast doubt on McCurdy's willingness to testify by citing to the principle that the Fifth Amendment privilege against self-incrimination persists until a conviction becomes final on appeal. (Doc. 276, at 2409.) The problem with this argument is that, while the government might be correct McCurdy *could* invoke his Fifth Amendment privilege even at a separate trial for Ventura, he has twice confirmed that he *would* not do so.

First, in the affidavit discussed above, McCurdy wrote that he was "willing to testify to this if called upon." (Doc. 272-2, at 2392.) Second and even stronger, less than two months ago he confirmed though his then-standby counsel that "if Angelina Ventura's case were to be severed and tried separately, he will testify on her behalf."[3] (Doc. 272-3.) Those assurances—particularly the second—provide enough support for Ventura to satisfy her burden on severance. That is especially so because the Court intends to hold Ventura's trial after McCurdy's. *See United States v. Phillips*, 946 F.2d 896, 1991 WL 211279, at *3, 1991 U.S. App. LEXIS 25538, at *7 (6th Cir. 1991) (unpublished table decision) (holding that waiver of the Fifth Amendment privilege is not necessary for severance when the testifying co-defendant's trial is held first); *Chasteen*, 2020 WL 5267935, at *3, 2020 U.S. Dist. LEXIS 160837, at *11-12 (similar).

## III. CONCLUSION

The Court GRANTS Ventura's motion to sever and will schedule Ventura's individual trial to follow the joint trial of her co-defendants, McCurdy and Stevenson.[4]

**IT IS SO ORDERED.**

Date: August 18, 2026

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

---

[3] At that time, McCurdy was proceeding pro se. Since then, he moved for appointment of counsel, and the Court appointed his standby counsel to formally represent him. (Doc. 274; July 22, 2026 Minutes of Proceedings.)

[4] Neither of the parties suggest that the admissibility of McCurdy's proffered testimony plays any role in the severance analysis. As such, nothing in this Order should be construed as expressing a view on the admissibility, or not, of that testimony.